# SUSQUEHANNA HEALTH MEDICAL GROUP
# PHYSICIAN EMPLOYMENT AGREEMENT

This Agreement is made by and between Susquehanna Physician Services d/b/a Susquehanna Health Medical Group (hereinafter referred to as "SHMG"), a Pennsylvania nonprofit corporation whose sole member is Susquehanna Health System (hereinafter referred to as "SHS"), and Navon Barot, MD (hereinafter referred to as the "Physician").

WHEREAS, SHMG is a nonprofit corporation incorporated under the laws of the Commonwealth of Pennsylvania with offices located at 1201 Grampian Blvd., Williamsport, PA 17701, and is a tax-exempt charitable health care organization described in Section 501 (c)(3) of the Internal Revenue Code (hereinafter referred to as the "Code"); and

WHEREAS, Physician is licensed to practice medicine in the Commonwealth of Pennsylvania, specializing in Gastroenterology; and

WHEREAS, SHMG agrees to employ Physician to provide medical services at offices located at Williamsport, PA and such other locations as the parties may agree upon; and Physician wishes to be so employed and to provide such services.

NOW, THEREFORE, in consideration of the mutual terms, conditions and covenants contained herein, the parties agree as follows:

1. **TERM OF AGREEMENT**
   This Agreement shall become effective                , 2009 and shall continue in effect and in force for a period of Five (5) years unless previously terminated according to the applicable provision contained herein.  The Agreement will automatically renew annually thereafter! for an additional one year terms under the same terms and conditions unless terminated earlier in accordance with the termination provisions herein.

2. **EMPLOYMENT**
   SHMG herewith employs Physician on a full time basis and Physician hereby accepts full time employment on the terms and conditions set forth herein.  Full time employment includes medical practice activities a minimum of forty (40) hours a week, in addition to reasonable on-call responsibility as is necessary to accommodate patients of Physician's practice.

3. **DUTIES OF PHYSICIAN**
   Physician shall provide inpatient and outpatient services for patients of Physician's practice and patient consultation as requested by other physicians. All services proVided by Physician under this Agreement shall be performed in compliance with each of the following: (a) acceptable standards of medical practice, such as are applicable to the maintenance of hospital medical staff privileges, HMO and/or PPO participation and any other reasonable quality improvement initiatives established by SHMG; (b) SHMG policies and procedures as may be in effect from time to time,

including, without limitation, SHMG's compliance plans, Physician Performance Expectations and Behavior Standards, charity care policies and conflict of interest policies; and (c) all applicable federal, state and other laws, rules and regulations. Physician also agrees to maintain medical staff privileges at Susquehanna Health System (hereinafter referred to as the "Hospital") and participate in Hospital Medical Staff Department and Committee activities and in quality improvement programs reasonably required by SHMG and the Hospital.

SHMG agrees that as a licensed physician, Physician shall be independently responsible for clinical decision making as respects patient care and in the manner and method by which medical services are provided or delivered to patients.

Physician also agrees to teach, supervise and/or precept Family Practice Residents, pursuant to the curriculum of the Family Practice Residency Program, in clinical and office rotations and other patient care activities relevant to Physician's specialty as mutually agreed upon by SHMG and Physician.  Physician further agrees to comply with, and participate as necessary in the SHS Corporate Compliance Program as adopted and maintained by SHS, as such compliance and participation is appropriate to the provision of services by Physician under this Agreement.

Physician also agrees to continuously meet the following requirements:

- maintain in good standing an unrestricted license to practice medicine in the Commonwealth of Pennsylvania;

- remain a member of the Medical Staff of Hospital with clinical privileges sufficient to permit him/her to care for Practice patients properly and to perform all other services required under this Agreement; maintain all customary narcotics and controlled substances numbers and licenses;

- remain board certified in Gastroenterology;

- not be a "sanctioned provider" within the meaning of Section 1128 of the Social Security Act or any amendments thereto or under similar applicable laws or regulations or be responsible for any billing infraction which results in criminal sanctions; and

- notify SHMG immediately of the voluntary or involuntary relinquishment of any medical staff privileges at any institution.

4.  **SALARY**

   A.   Base Salary for the First Three Years:
        SHMG agrees to pay Physician a Base Salary in the amount of $560,593 for the first three years of this Agreement.

2

    B.    <u>Base</u> <u>Salary</u> <u>Adjustment</u> <u>for</u> <u>Subsequent</u> <u>Years</u>:
Physician's Base Salary shall be subject to adjustment (up or down) in the fourth and fifth years of the Agreement and any renewal term of this Agreement, pro rata, in the *event* Physician fails to produce or exceeds 10,000 Work Relative Value Units ("WRVU's"), as defined by the Centers for Medicare and Medicaid Services ("CMS"), in Physician's practice in the prior contract year. The dollar *value* for each WRVU throughout the term of the agreement shall be based upon the 2007 CMS Fee Schedule. The formula that will be used to determine Base Salary for contract year four will be actual WRVU's at the year end for the prior contract year divided by 10,000 WRVU's and multiplied by $560,593. SHMG shall perform a financial analysis of the performance of Physician's practice at the end of year three of this Agreement, using the formula referenced *above* in order to determine the Base Salary for the following year.

    C.    <u>Payment</u> <u>of</u> <u>Salary</u>
Physician's Base Salary shall be paid in equal, pro rata, bi-weekly amounts according to the regular pay periods and pay practices of SHMG.

5. **QUALITY BONUS**
In order to promote the efficient operation of Physician's medical practice and the availability and provision of high quality medical service to the community served by SHMG, Physician shall be eligible to receive up to $5,000 in an annual Quality Bonus based upon a year end (annual) performance *review* which may include and not be limited to the following *evaluative* criteria, for which specific metric targets will be determined by SHMG:

    A.    Patient Satisfaction
    B.    Referring Physician Satisfaction
    C.    SH Citizenship to include:
- Maintaining SH Medical Staff voting privileges
- Timely completion of medical records
- Participation in and support of the SH Gastroenterology Service Line

Meeting Quality measures to be determined in consort with Physician prior to employment

6. **INCENTIVE COMPENSATION**
In order to promote the efficient operation of Physician's medical practice and the availability and provision of high quality medical service to the community served by SHMG, Physician shall be eligible to participate in an incentive compensation program in the first three years of the Agreement. If Physicians WRVU's at the end of the contract year exceed 10,000 WRVU's, physician shall receive Additional Compensation, subject to the limitations set forth in Section 7 below, In accordance with the following formula:

3

[(NB X C) X A] - O  Where: A = Actual WRVU worked
B = 100% target WRVU (10,000)
C = 100% target $iWRVU ($56.06)
O = 100% target Salary ($560,593)

Incentive Compensation:

[(Actual WRVU/1 0,000) X $56.06 X Actual WRVU] - $560,593
    (A)              (B)         (C)          (A)              (D)

Example: if at year end WRVU worked is 10,609, then:
Incentive compensation = *[(10,609/10,000)* X $56.06 X 10,609] - $560,593 =
$ 70,367.00.

Physician will receive WRVU credit in a manner agreed to (in writing and as an addendum to this Agreement) by Physician and SHMG, and approved by SH Administration, for the professional clinical services rendered by any Physician Assistant or Certified Registered Nurse Practitioner assigned to Physician's practice and supervised by Physician for purposes of calculating incentive compensation for the relevant contract year.

For contract years four and five in the initial term of this Agreement and any renewal term of this Agreement, the incentive target WRVU to be used in the above formula as the value for "B" may be adjusted pursuant to the provisions of paragraph 4 above to remain consistent with any adjustment in Base Salary. After the first three years of this Agreement, if CMS has published an updated RVU schedule, either party has the right to request a review of the change and its relative impact on physician compensation with consideration to productivity and reimbursement ratios. The parties must agree to any changes accordingly with consideration to a fair and equitable end result to both parties.

Annually, at the end of each year of this Agreement, SHMG shall perform a financial analysis of the performance of Physician's practice using the calculation of Incentive Compensation referenced above. If said calculation results in Incentive Compensation being available for payment, Physician will be paid Incentive Compensation in a lump sum, less applicable taxes and withholdings.

7. **LIMITATION ON COMPENSATION**
The total amount of Base Salary plus Incentive and Quality Bonus Compensation payable by SHMG to Physician in any year of this Agreement shall not exceed the 90th percentile of the most recently available comparable Compensation Survey published by the Medical Group Management Association for physicians in the same specialty as Physician. If Physician's productivity, expertise and overall job performance suggests that his compensation should exceed the 90th percentile compensation limitation set forth herein, it will be presented to the Compensation Committee of the SHMG Board of Directors for consideration and a determination

4

in accordance with SHMG policy and procedure. However, Physician's total compensation shall not exceed such amount as would constitute reasonable compensation when paid by an organization, such as SHMG, which is a tax-exempt organization under Section 501 (c)(3) of the Code.

8. **RESTRICTIVE COVENANTS**
   A. <u>Exclusive</u> <u>Service</u>:
   Pursuant to the full time employment requirements contained herein, Physician agrees that he shall not provide any patient care or medical services other than those authorized or approved by SHMG during the term of this Agreement for or on behalf of Physician or any other entity. Should Physician desire to provide such services other than those required by his or her employment by SHMG, including moonlighting opportunities, or those generating revenues for professional services payable directly to Physician or to a third party, Physician shall submit a written request for approval to SHMG prior to undertaking or providing said services. The approval of SHMG shall not be unreasonably withheld.

   In the event Physician undertakes or provides such services without the prior approval of SHMG, Professional Liability Insurance provided to Physician pursuant to this Agreement shall not apply to such services.

   B. <u>Non-Competition</u>:
   The parties acknowledge that Physician has and will receive substantial economic benefit as a result of his/her employment by SHMG and that if Physician is permitted to practice in close proximity to the medical practice location occupied by Physician during the term of this Agreement, SHMG will suffer substantial economic damage. Physician therefore specifically agrees that for a period of two (2) years following termination of this Agreement, Physician shall not directly or indirectly enter into any employment or other agreement for the purpose of providing Physician services within a fifty (50) mile radius of Physician's practice location with any other hospital, clinic, health plan or HMO-related/affiliated healthcare provider.

   Physician understands and agrees that if Physician wishes to operate a medical practice as an employee of any other hospital, clinic, health plan or HMO-related/affiliated healthcare provider within the restricted area during the two (2) years following termination of Physician's employment, SHMG will waive this restriction upon the receipt of payment, in advance, of a sum equal to the greater of:

   (a.) Physician's Base Salary as of the date of this Agreement; or
   (b.) the total amount of Base Salary paid by SHMG to Physician during the twelve (12) calendar months immediately preceding the month of the termination of Physician's employment.

>  Physician specifically acknowledges that the financial burdens SHMG would endure are very difficult to ascertain and quantify, and Physician agrees that the aforementioned is a fair amount of compensation to pay, as liquidated damages, and not as a penalty, in the event Physician wishes to continue to practice medicine within the restricted area within the specified two (2) year period.
>
>  The restriction contained in this Section 8(B) shall not be interpreted or construed as prohibiting Physician from establishing into a private practice of medicine.

>  C.     <u>Injunctive Relief:</u>
>  Physician acknowledges that damages alone will not be an adequate remedy for any breach or violation of these provisions and that SHMG shall be entitled, as a matter of right, to injunctive relief with respect to any such breach or violation in any court of competent jurisdiction.  If any of the provisions of this section are held to be in any respect an unreasonable restriction upon Physician, then they shall be deemed to extend to the maximum period of time, geographic area or range of activities as to which they may be found enforceable.  In the event that Physician shall be in violation of any of the restrictions imposed pursuant to this section, then the restricted period shall extend for a period of time equal to the period of time during which any such breach should occur, and in the event that SHMG should be required to seek relief from such breach in any court of competent jurisdiction, then said two year period shall be extended for the period of time incurred as a result of the pendency of such proceedings, including all appeals.  This provision shall survive termination of this Agreement.

9. **THIRD PARTY PAYMENT MECHANISMS**
   Physician acknowledges that it is the policy of SHMG to participate in a broad range of health insurance programs.  Physician agrees to use best effort to obtain and maintain good standing to participate in all health insurance programs in which SHMG participates.  Physician also agrees to accept the patients of any health insurance plan with which SHMG has agreed to participate.

   Physician also agrees to accept the usual and customary fee schedules published by Medicare, Medical Assistance and Pennsylvania Blue Shield and to participate in HMO's, PPO's and such other capitated or fee for service third party payment plans as may be deemed necessary and appropriate by SHMG.  However, under no circumstances shall Physician enter into any such HMO, PPO or other payment agreement without first receiving the express written approval of SHMG. Physician shall use his/her best efforts to obtain and maintain good standing to participate in all payment programs in which SHMG participates.

6

Physician accepts responsibility for coding and appropriate corresponding documentation and shall not transfer this responsibility to any other personnel.

In the event that new or changes of interpretation in existing government regulations or third party reimbursement policies occur, which adversely effect the method of operation, revenues expected or availability of Physician revenues to be available from same, SHMG and Physician mutually agree to cooperate in making revisions to this Agreement in order to comply with such regulations and/or third party reimbursement policy revisions in order to preserve the economic viability of this Agreement.

Physician agrees to, and shall, indemnify and hold SHMG, its directors, officers, agents and employees harmless from and against any and all claims, demands, actions, causes of action, losses, damages or expenses, including attorney's fees, penalties or interest which SHMG may suffer or incur arising out of any claim, demand, action, cause of action or proceeding which may be brought against SHMG and which is based upon any action or failure to act by Physician which violates any Medicare or Medicaid statute, rule or regulation, or any rule or regulation of any payor; unless such action or failure to act was taken in good faith, and was not the result of any negligent, knowing or willful conduct on the part of Physician.

SHMG will seek to notify Physician at Physician's last known address to SHMG as soon as reasonably possible following SHMG becoming aware of any such claim or demand, and Physician shall immediately undertake any and all such actions as may be necessary to protect the interests of SHMG described herein. This provision shall survive termination of this Agreement.

10. **FEES** FOR SERVICES
    All revenues arising from the provision of Physician's services, except those paid under an SH Medical Director's contract, shall be the sole and exclusive property of SHMG. Physician shall assign to SHMG the collection of all Net Practice Receipts resulting from or related to Physician's practice of medicine.

    The Schedule of Charges related to Physician's practice and policies relative to any courtesy discounts therefrom, for all services performed by Physician, shall be determined by SHMG with input from Physician. Charity care policies shall be established by SHMG.

11. **CONTINUING MEDICAL EDUCATION**
    SHMG agrees to provide Physician with the opportunity to attend continuing medical education programs for a maximum of ten (10) business days (Monday through Friday) annually, with a maximum annual expenditure for course fees, housing, transportation and incidental expenses in the amount of $5,000. Said educational opportunities and expenditures are subject to prior approval by SHMG.

7

12. **FRINGE BENEFITS**
    SHMG agrees to include Physician in its Fringe Benefit programs, which may include, without limitation, its surgical and medical benefit program or plan, life insurance program, disability insurance program, pension plan, paid time off and other benefit programs in accordance with SHMG policies as are presently or in the future may be in existence. Such benefit programs shall be subject to amendment or change at the sole discretion of SHMG.

13. **OFFICE AND SUPPORT PERSONNEL**
    SHMG agrees to provide to Physician appropriate office space, equipment and supplies, and such office and support personnel and services as are necessary to accommodate Physician's medical practice. Support personnel provided to Physician shall be employees of SHMG and shall be subject to all SHMG policies and procedures governing employees in similar personnel classifications. SHMG and Physician agree to jointly participate in the interview, selection and performance appraisal of all such support personnel.

14. **OFFICE FACILITIES**
    SHMG agrees to provide Physician with an appropriate office, including such furnishings and equipment as are necessary and appropriate for Physician's medical practice. Nothing contained within this Agreement shall convey to Physician the right of ownership, private use, assignment, sublease or encumbrance of any such property or equipment.

    Any equipment owned by Physician and used in the practice shall remain the sole property of Physician and may be removed by Physician at the termination of this Agreement. Equipment owned by Physician, utilized in the practice, shall be enumerated and listed on Attachment "A."

15. **PRACTICE RECORDS**
    All medical records and business records compiled during the term of this Agreement shall be prepared and maintained in accordance with generally accepted medical practice and SHMG's policies and procedures and in a manner subject to approval by SHMG. All such records shall be subject to review by a representative or designee of SHMG upon twenty-four (24) hours notice.

    All medical records compiled by Physician during the term of this Agreement shall, upon termination or expiration, remain the property of SHMG, but shall be available for review or copying by Physician. This provision shall survive any termination or expiration of this Agreement.

16. **REGULATORY COMPLIANCE**
    A.  Nondiscrimination:
        Physician acknowledges that SHMG has a responsibility as a tax exempt, nonprofit corporation to provide charity care. Accordingly, Physician agrees to render medical services to all patients, and agrees not to

8

      differentiate or discriminate in the provision of such services to patients because of race, color, national origin, ancestry, religion, sex, marital status, sexual orientation, physical or mental handicap, or age, except to the extent that a circumstance such as age, preexisting medical condition, or physical or mental handicap is medically significant to the provision of the appropriate care to the patient.

B.      <u>Stark Law and Anti-Kickback Statute</u>:
Physician shall at all times comply with 42 U.S.C. Section 1395nn, (a/k1a the "Stark" Regulations, relating to prohibited referrals) as amended from time to time, and 42 U.S.C. Section 1320a-7b, as amended from time to time (the anti-kickback provisions of the Social Security Act), or existing or future state or federal law or regulation prohibiting the payment or acceptance of remuneration in exchange for referrals or limiting Physician's ability to make referrals.

C.      <u>Billing and Coding</u>:
Physician shall at all times be responsible to code all billing appropriately in accordance with state and federal law and third-party payor procedure.

D.      <u>Maintenance of, and Access to, Records</u>:
Physician shall at all times maintain all records in compliance with all federal and state laws, including without limitation, Public Law 96-499, the <u>Omnibus Budget Reconciliation Act,</u> 42 CFR 420 et seq., also codified as Section 1861(v)(1)(1) of the Social Security Act, whereby the parties agree to provide the Secretary of the Department of Health and Human Services, the Comptroller General or their duly authorized representatives access to books, documents or records necessary to verify the cost of services provided under this Agreement. Access to said records shall continue on a year to year basis for a period of not less than four (4) years following termination of this Agreement.

E.      <u>Fraud and Abuse</u>:
SHMG and Physician intend and in good faith believe that this Agreement complies with all applicable federal and state laws, regulations and proposed regulations governing Medicare and Medicaid fraud and abuse. Should any provision of this Agreement be deemed contrary to applicable law or regulation, then SHMG and Physician agree in good faith to renegotiate such provision to the mutual satisfaction of both parties. In the event the parties are not able to mutually agree on modification of the provision, then either party may terminate this Agreement immediately if the terminating party has a good faith belief that the provision creates unfavorable exposure under the Medicare and/or Medicaid Laws.

  F.      <u>HIPAA Compliance</u>:

9

>   Physician shall maintain the confidentiality of all medical records to which Physician may require or acquire access in the course of performing services hereunder in accordance with all applicable federal and state laws and regulations governing access to and privacy of medical records, including, but not limited to the Health Insurance Portability and Accountability Act ("HIPAA") and its implementing regulations as in effect from time to time, and shall not reveal the contents of patient's medical records to any third party except as necessary to provide services under this agreement or as permitted or required by federal or state laws and regulations.
>
>   G.  <u>Compliance</u> <u>Support</u>:
>       Physician shall be provided with educational opportunities, information, and SHS and SHMG staff resources to consult with and provide assistance to Physician on the regulatory compliance issues applicable to Physician's practice.

17. **PROFESSIONAL LIABILITY INSURANCE**
    SHMG shall provide Physician with professional liability insurance, subject to the conditions contained herein, in accordance with the statutorily required limits of liability of the Commonwealth of Pennsylvania, including participation in the MCARE Fund (formerly, Medical Liability Catastrophe Loss Fund). Physician shall be named as an additional insured on a policy of insurance placed by SHMG and shall be provided with appropriate documentation of insurance coverage, and shall be provided with an insurance Extended Reporting Endorsement (and proof thereof upon request) following the termination of this Agreement.

    As a requirement of this Agreement, Physician shall be responsible for reporting any claim or incident which might result in potential liability or the receipt of any notice of litigation to the Susquehanna Health System Risk Management Department, and shall fully cooperate with SHMG in defending against such claims.

18. **ACCOUNTS RECEIVABLE**
    All accounts receivable for services provided by Physician during the term of this Agreement shall remain the property of SHMG following its termination.

19. **TERMINATION**
    This Agreement shall be terminable at will by either party at any time during its term. Said termination shall become effective by service of written notice of intent to terminate not fewer than ninety (90) days prior to the effective date of termination.

    **This** Agreement shall automatically terminate at the discretion of SHMG:

- should Physician fail to maintain his/her license to practice medicine in the Commonwealth of Pennsylvania or should the Physician's license to practice medicine be restricted, suspended, revoked or terminated in any jurisdiction;

- should Physician fail to maintain membership or clinical privileges on the medical staff at any facility where Physician holds privileges, if such failure requires a report to the National Practitioner Data Bank;

- should Physician fail to maintain the board certification required hereunder;

- should Physician be formally criminally charged by governmental authorities or indicted with any felony offense involving moral turpitude that may have an impact upon Physician's duties hereunder;

- should Physician fail to comply with the requirements of this Agreement respecting assignment of fees;

- should Physician fail to be eligible for or become unable to qualify for professional liability coverage with SHMG's designated professional liability carrier to cover all essential functions of Physician's employment hereunder;

- should Physician be terminated from participation by any health insurance program or third party payor mechanism as a result of deficiencies associated with quality of care provided;

- should Physician become a "sanctioned person" within the meaning of Section 1128 of the Social Security Act or any amendments thereto or under similar applicable laws or regulations or should Physician be responsible for any billing infraction which results in criminal sanctions;

- should physician fail to execute a written acknowledgement of the the SHS Corporate Compliance Program as requested;

- should Physician fail to maintain a current brug Enforcement Agency narcotics number or other controlled substances numbers and licenses;

- should Physician die.

Either party may terminate this Agreement for a material breach of the Agreement by the other party or a failure to fulfill the material terms of this Agreement, including but not limited to:

- Physician's failure to complete all necessary and appropriate documents necessary for participation in any health insurance program or third party payor mechanism in which SHMG decides to participate; and
- Physician's failure to comply with the SHS Corporate Compliance Program and SHMG Billing Policies and Procedure.

11

In the event of a material breach of this Agreement by either party, the non-breaching party shall give the breaching party written notice specifying the default along with notice to terminate within thirty (30) days.  The breaching party shall have thirty (30) days within which to cure the default.  If such default is not cured within that time, this Agreement shall terminate.

20. **SEVERENCE**
In the event SHMG terminates this Agreement "without cause", or in the event Physician terminates this Agreement for material breach by SHMG, SHMG agrees that it shall pay Physician a severance payment ("Severance Payment") equal to the monthly Base Salary paid by SHMG to Physician during the twelve (12) calendar months immediately preceding the month of Physician's termination from employment. For purposes of this Paragraph 20, "without cause" is defined as any reason other than a material breach of the Agreement by Physician or those reasons specifically listed in the Agreement as a basis for automatic termination of the Agreement.  Any Severance Payment to be paid by SHMG under this Paragraph shall be paid in equal, pro rata, bi-weekly amounts for fifty-two weeks according to the regular pay periods and pay practices of SHMG.

21. **AMENDMENT, MODIFICATION OR REVISION**
This Agreement shall be amended, modified or revised only upon written agreement of the parties hereto.  Any such amendment, modification or revision shall be attached to this Agreement and shall be incorporated as part of this Agreement as if originally included.

22. **ASSIGNMENT**
**The** duties and responsibilities of Physician under this Agreement, as an employee of SHMG, are not assignable or transferable.  The duties and responsibilities of SHMG may be assigned in whole or in part to any organization or entity which is the successor to or affiliated with SHMG.

23. **INDEMNITY**
In the event that the entering into of this Agreement by either party Is asserted by any third party to be a breach of any other contract to which one of the contracting parties hereto is a party, then the alleged breaching party shall indemnify and hold harmless the contracting party hereto from and against any and all claims arising from any such assertion by the third party.

24. **GOVERNING LAW AND INTERPRETATION**
This Agreement shall be made, construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania and shall be interpreted and applied in a manner consistent with SHMG's status as an organization described in Section 501 (c)(3) of the Internal Revenue Code.

25. **CONFIDENTIALITY**
    Physician agrees that the contents of this Agreement are deemed by SHMG to be proprietary and confidential. Physician agrees to maintain the confidentiality of this document and protect it from disclosure to any third parties, except pursuant to attorney-client privilege or as otherwise required according to law.

26. **ENTIRE AGREEMENT**
    This Agreement represents the entire Agreement between the parties and supersedes all previous written or verbal understandings.

AND NOW, intending to be legally bound by the provisions set forth herein, the parties set their hand and seal as follows:

| PHYSICIAN | SUSQUEHANNA PHYSICIAN SERVICES |
|---|---|
| _[signature]_ | _[signature]_ |
| Navin Barot, MD | President  Chairman |
| _[signature]_ | _[signature]_ |
| Witness | Witness |
| 5-18-09 | 5-18-09 |
| Date | Date |

(Barot 2009.doc)

<u>ATTACHMENT</u> <u>A</u>

Equipment Owned by Physician

# Gastrointestinal
## Relative Value Units 2007
(Commonly Used)
May 18, 2009

| CPT Code | Description | RVU(Work) |
|---|---|---|
| **Surgery:** | | |
| 43235 | Upper Gastrointestinal Endoscopy | 2.39 |
| **43239** | **Upper gastrointestinal Endoscopy w/ biopsy** | **2.87** |
| **45378** | **Colonoscopy** | **3.69** |
| 45380 | Colonoscopy *w/* biopsy | 4.40 |
| **Medicine:** | | |
| 99144 | Moderate (conscious) sedation, ≥ age 5, 1st 30 mins | 1.28 |
| 99145 | Moderate (conscious) sedation, ea. add. 15 mins | .52 |
| **Evaluation and Management (E & M):** | | |
| 99203 | Office Visit, New Patient (30 mins face-to-face) | 1.34 |
| 99204 | Office Visit, New Patient (45 mins face-to-face) | 2.30 |
| 99205 | Office Visit, New Patient (60 mins face-to-face) | 3.00 |
| 99213 | Office Visit, Est. Patient (15 mins face-to-face) | .92 |
| 99214 | Office Visit, Est. Patient (25 mins face-to-face) | 1.42 |
| 99215 | Office Visit, Est. Patient (40 mins face-to-face) | 2.00 |
| 99221 | Initial Hospital Care (30 mins, unit/floor) | 1.88 |
| 99222 | Initial Hospital Care (50 mins, unit/floor) | 2.56 |
| 99223 | Initial Hospital Care (70 mins, unit/floor) | 3.78 |
| 99231 | Subsequent Hosp. Care (15 mins, unit/floor) | .76 |
| 99232 | Subsequent Hosp. Care (25 mins, unit/floor) | 1.39 |
| 99233 | Subsequent Hosp. Care (35 mins, unit/floor) | 2.00 |
| 99238 | Hospital Discharge (30 mins, unit/floor) | 1.28 |
| 99239 | Hospital Discharge (>30 mins, unit/floor) | 1.90 |
| 99251 | Initial Inpatient Consult (20 mins, unit/floor) | 1.00 |
| 99252 | Initial Inpatient Consult (40 mins, unit/floor) | 1.50 |
| 99253 | Initial Inpatient Consult (55 mins, unit/floor) | 2.27 |
| 99254 | Initial Inpatient Consult (80 mins, unit/floor) | 3.29 |
| 99255 | Initial Inpatient Consult (110 mins, unit/floor) | 4.00 |