IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAVIN BAROT, | : | 4:14-CV-00673 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| SUSQUEHANNA PHYSICIAN | : | |
| SERVICES D/B/A SUSQUEHANNA | : | |
| HEALTH MEDICAL GROUP, | : | |
| DIVINE PROVIDENCE HOSPITAL OF | : | |
| THE SISTERS OF CHRISTIAN | : | |
| CHARITY, SUSQUEHANNA HEALTH | : | |
| SYSTEM, and SUSQUEHANNA | : | |
| PHYSICIAN SERVICES, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**
March 28, 2016

Pending before the Court is a motion to compel discovery, filed by Plaintiff

Navin Barot (hereinafter "Dr. Barot") filed against Defendants Susquehanna

Physician Services d/b/a Susquehanna Health Medical Group, Divine Providence

Hospital of the Sisters of Christian Charity, Susquehanna Health System, and

Susquehanna Physician Services (hereinafter "Defendants").[1] Dr. Barot seeks an

Order compelling Defendants to produce the minutes of the physician

Compensation Committee of Susquehanna Health Medical Group for meetings that

occurred during Dr. Barot's employment, specifically those containing a record of

---

[1] ECF No. 32.

discussions regarding other physicians who sought compensation in excess of ninety percent of other physicians in the field. Dr. Barot also seeks permission to depose witnesses, including members of the Compensation Committee, regarding the Committee's deliberations of other physicians' compensation requests. The matter has been fully briefed and is now ripe for disposition. In accordance with the following reasoning, Dr. Barot's motion to compel is denied.

## I. BACKGROUND

Dr. Barot, a board certified gastroenterologist, entered into a five-year employment agreement (hereinafter "Employment Agreement") with Defendants to provide medical services on or about May 18, 2009. The Employment Agreement was signed pursuant to a negotiation process where incentive pay and quality bonus compensation was to be paid, if certain conditions were met, in addition to base salary. Specifically, the Employment Agreement provided that the total amount of pay (including base and incentive pay together with quality bonus compensation) could not exceed the 90th percentile of the most recently available comparable Compensation Survey published by the Medical Group Management Association for physicians in the same specialty (hereinafter "the 90th percentile").

If the physician's "productivity, expertise and overall job performance," however, suggested that his compensation should exceed the 90th percentile, his compensation would be presented to the Compensation Committee. The

Committee would meet and make a determination in accordance with Susquehanna Health Medical Group's policy and procedure, not to exceed an amount considered "reasonable compensation" to be paid by a tax exempt organization.[2]

Dr. Barot began his employment with Defendants' on July 27, 2009. After the first year of his five year contract was completed, Dr. Barot sought compensation exceeding the 90th percentile. The request was submitted to the Compensation Committee. Despite concerns with audit documentation, a decreasing referral base, professional behavior issues, and high staff turnover, the Committee approved Dr. Barot's request to pay the additional compensation in excess of the 90th percentile figure. He was paid $160,560 above the 90th percentile figure of $777,340, to total $937,900.

On May 12, 2011, Dr. Barot's compensation request for the first contract year was again brought before the Compensation Committee to discuss whether additional compensation should be paid related to conscious sedation RVU credit (CPT codes 99144 and 99145), totaling either $304,077 or $210,428, depending on how the credits were calculated. After deliberations, the Compensation Committee denied Dr. Barot's request for the additional compensation citing performance issues, very low patient satisfaction, referring physician complaints, and declining work volume trend. The Committee also "determined that Dr. Barot's total

---

[2] ECF No. 36 at 5-6 (*citing* Exhibit 6 at 4-5).

compensation would exceed fair market value if any additional compensation payments were made which is contrary to the obligation of a non-profit tax-exempt organization" and that, with the additional compensation, "Dr. Barot would be [paid] a ratio at least 1.41 times higher than the . . . 90th percentile."[3]

On May 15, 2011, three days after the Compensation Committee denied the request for the additional compensation, Dr. Barot signed an employment contract with Memorial Hospital at Gulfport, Mississippi.

## II. DISCUSSION

Dr. Barot seeks an Order compelling Defendants to produce the confidential minutes of Compensation Committee meetings during which the compensation of four other physicians who were seeking compensation above the 90th percentile was discussed.[4] Dr. Barot also seeks leave to depose the members of the Compensation Committee about the Committee's deliberations regarding the four other physicians.[5]

Dr. Barot argues that the meeting minutes for the four other doctors are relevant to show the following points: 1) a willingness for the Compensation Committee to work with the physicians towards an amicable resolution; 2) a willingness of the Compensation Committee to manipulate the 90th percentile

---

[3] ECF No. 36 at 9.
[4] *Id.* at 1.
[5] Dr. Barot's counsel previously viewed the meeting minutes under an "attorney's eyes only" review pursuant to an agreement reached during a teleconference with this Court on August 13, 2015.

number to attain the desired rate of pay; 3) a willingness of the Compensation Committee to pay a higher percentage above the 90th percentile than Dr. Barot was paid;[6] 4) a willingness for the Compensation Committee to review requests for payment above 90% prior to the end of the contract year; and 5) the ability of the Compensation Committee to dock a physician for procedural issues.[7] Overall, Dr. Barot seeks to use the minutes to prove that the Compensation Committee did not adhere to specific policies or procedures in its deliberations, as was stated in the Employment Agreement, and instead used "outcome-driven" deliberation means.[8]

Defendants argue that minutes for meetings during which compensation for physicians other than Dr. Barot are irrelevant to Dr. Barot's claim for breach of contract.[9] They further argue that even if this Court finds that the minutes are relevant, the minutes are confidential and the confidential nature of the minutes far outweighs any relevance they might have.

Federal Rule of Civil Procedure 26(b)(1), recently amended as of December 1, 2015, provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

---

[6] Dr. Barot argues that, while he was only approved for compensation 20.66% above the 90th percentile, a different physician was approved for 32.86% above the 90th percentile. This physician, however, was paid a total compensation of $584,765.10, significantly less than the $937,900 that Dr. Barot was ultimately approved for.
[7] ECF No. 36 at 10-13.
[8] *Id.* at 13.
[9] ECF No. 44 at 11. In his support brief, Dr. Barot seeks the requested discovery in regard to his claim for breach of contract. In the teleconference with this Court on November 6, 2015 regarding this discovery dispute, counsel for Dr. Barot specifically indicated that the documents in questions were sought only for the breach of contract claim.

of the case . . ."[10] Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and if it "is of consequence in determining the action."[11] Discovery sought "need not be admissible" in trial, so long as it is otherwise obtained within the scope of discovery delineated in Rule 26.[12]

The party objecting to discovery must state the grounds for the objection with specificity.[13] The party requesting the discovery then bears the burden to prove that the requested discover falls within the bounds of Rule 26.[14] If this burden is met, the objecting party must then "convince the court why discovery should not be had."[15]

As stated above, Defendants object to Dr. Barot's request for the Compensation Committee minutes that document deliberations of other physician's compensation on the basis that the minutes are not relevant to Dr. Barot's breach of contract claim. They argue that the Committee's determinations regarding the reasonableness of other physicians' compensation has no relevance to proving that Defendants breached their contract with Dr. Barot.

In his complaint, Dr. Barot alleges that Defendants breached the Employment Agreement by:

---

[10] Fed. R. Civ. P. 26(b)(1).
[11] F.R.E. 401; *see also Shaffer v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 931101, *1 (M.D. Pa. March 10, 2014).
[12] Fed. R. Civ. P. 26(b)(1).
[13] *Momah v. Albert Einstein Medical Center*, 164 F.R.D. 412, 417 (E.D. Pa. 1996).
[14] *Id.*
[15] *Id.*

a. refusing to allow Dr. Barot to attend continuing education;
b. refusing to allow Dr. Barot the opportunity to interview and hire candidates that would work for him;
c. refusing to properly compensate Dr. Barot for his WRVU's and incentive compensation;
d. improperly terminating Dr. Barot from his position as Susquehanna Health System Medical Director of the Gastroenterology Program;
e. discriminating against Dr. Barot on the basis of his race and National Origin; and
f. failing to pay Dr. Barot severance payments due under the terms of his Employment Agreement.[16]

Allegation c is the only allegation at issue for the purposes of this discovery dispute.

Dr. Barot alleges that Defendants breached the Employment Agreement by refusing to include CPT codes 99144 and 99145 in the calculation of his incentive compensation. He argues that their refusal to award him the additional compensation, a determination that was supposed to be made in accordance with Susquehanna Health Medical Group "policy and procedure" according to the Employment Agreement, was instead made arbitrarily. Dr. Barot argues that he should be entitled to the meeting minutes to demonstrate the Compensation Committee's arbitrary and "disingenuous" deliberation process.[17]

This Court is persuaded that the Compensation Committee minutes regarding the compensation of the other four physicians is not relevant to Dr. Barot's breach of contract claim. Defendants have already provided copies of all

---

[16] ECF No. 1.
[17] ECF No 36 at 18.

requested Susquehanna Health Medical Group policies and procedures to Dr.

Barot. Defendants have also provided the Compensation Committee minutes for

the meetings during which Dr. Barot's compensation was discussed. Defendants

also do not object to Dr. Barot deposing the members of the Compensation

Committee regarding the policies and procedures they used in deciding to deny Dr.

Barot's additional compensation. Dr. Barot has previously been provided with the

discovery necessary to prove his argument that the Compensation Committee used

"outcome-driven" deliberation means instead of following the required policies

and procedures, if this is in fact the case, without the confidential meeting minutes

involving the four other physicians at issue here.

In proving his breach of contract claim, Dr. Barot must prove that

Defendants breached the Employment Agreement he entered into with

Defendants.[18] Defendants' actions with regards to other physicians are irrelevant.

As Defendants point out,

> Each physician's situation and the facts surrounding the
> Compensation Committee's determinations are different, so as to
> prevent a comparison to what occurred in a wholly unrelated contract,
> with different terms and different facts, to support his own breach of
> contract claim . . .[19]

---

[18] While Defendants offer compelling arguments as to why they did not breach the Employment Agreement, these arguments are more appropriately brought in a motion for summary judgment and will not be addressed in this Memorandum.

[19] ECF No. 44 at 14.

Defendants also assert that, while some requests for additional compensation with regards to the other four physicians were granted and some were denied, none of the other physicians requested the amount of compensation Dr. Barot requested. Furthermore, none of the other four physicians at issue dealt with the gastroenterology-specific CPT codes at issue in the case at hand.[20] As the facts surrounding the four other physicians' compensation deliberations appear to be incomparable to the case at hand, the meeting minutes documenting them are not relevant to the matter at hand.

As this Court finds that the meeting minutes concerning the other four physicians do not come within discoverable evidence as defined by Rule 26, this Court need not determine whether their confidential nature outweighs their relevance.

## III. CONCLUSION

For the reasons set forth herein, Dr. Barot's motion to compel discovery is denied.

An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[20] ECF No. 44 at 11, n.9.