**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| NAVIN BAROT, | : | |
| | : | |
| Plaintiff | : | |
| | : | Civil Action No: |
| V. | : | 4:14-cv-00673-MWB |
| | : | |
| SUSQUEHANNA PHYSICIAN SERVICES | : | |
| D/B/A SUSQUEHANNA HEALTH | : | Honorable Matthew W. Brann |
| MEDICAL GROUP, | : | |
| DIVINE PROVIDENCE HOSPITAL OF THE | : | |
| SISTERS OF CHRISTIAN CHARITY, | : | |
| SUSQUEHANNA HEALTH SYSTEM, | : | |
| and SUSQUEHANNA PHYSICIAN | : | |
| SERVICES, | : | |
| | : | *Electronically Filed* |
| Defendants | : | |
| | : | |

**BRIEF IN OPPOSITION OF DEFENDANTS' MOTION**
**<u>FOR SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

**TABLE OF CITATIONS**      iii

**INTRODUCTION**      1

**I.**      **PROCEDURAL HISTORY**      2

**II.**      **STATEMENT OF MATERIAL FACTS**      3

**III.**      **STATEMENT OF QUESTIONS INVOLVED**      5

     A.      Are Defendants entitled to summary judgment on Plaintiff's contract claim?

**IV.**      **STANDARD OF REVIEW**      5

**V.**      **LEGAL ARGUMENT**      7

     A.      The Compensation Committee Improperly Denied Plaintiff Incentive Compensation      7

     B.      Plaintiff was Discriminated Against on the Basis of His Race and National Origin      14

     C.      Plaintiff Provided Appropriate Notice of a Breach      15

**VI.**      **CONCLUSION**      16

## **TABLE OF CITATIONS**

CASES

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505 (1986)          6

*Barton v. Hewlett-Packard Co.*, 635 F. App'x 46 (3d Cir. 2015)          12- 13

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358 (3d Cir. 1992),          6
*cert. denied,* 507 U.S. 912, 113 S. Ct. 1262 (1993)

*Bd. of Trustees, Roofers Local No. 30 Combined Welfare Fund v. Int'l Fid. Ins. Co.*,          12
63 F. Supp. 3d 459 (E.D. Pa. 2014), *aff'd,* 644 F. App'x 133 (3d Cir. 2016)

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)          6

*Dept. of Transp. v. Manor Mines, Inc.,* 523 Pa. 112, 565 A.2d 428 (1989)          7

*D'Huy v. D'Huy,* 390 Pa.Super. 509, 568 A.2d 1289 (1990)          7

*Eastman Kodak Co. v. Image Technological Services, Inc.,* 504 U.S. 451,          6
112 S.Ct. 2072 (1992)

*In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238 (1983)          6

*Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659 (1982)          7

*Z & L Lumber Co. of Atlasburg v. Nordquist,* 348 Pa.Super. 580,          8
502 A.2d 697 (1985)

*Zebrowski v. Evonik Degussa Corp. Admin. Comm.*, 578 F. App'x 89 (3d Cir. 2014)     13

RULES

Fed. R. Civ. P. 56.          5

STATUTES AND REGULATIONS

IRC §53.4958                                             9

42 U.S.C. §1320 et seq.                                  9

42 U.S.C. §1395 et seq.                                  9

The primary focus of Defendants' Motion for Summary Judgment and supporting Brief rests on two faulty premises. First, and most importantly, Defendants incorrectly insist that SHMG's Compensation Committee was unambiguously granted unfettered discretion to deny Plaintiff's incentive compensation payments at its whim, despite the parties agreeing to specific language in the Employment Agreement that said incentive compensation payments would be paid in accordance with SHMG policy and procedure. To support its claims, Defendants improperly rely on cases involving contracts which in fact, by their actual language, granted unfettered discretion to one of the parties. As discussed herein, those cases are simply not analogous to Plaintiff's Employment Agreement where the parties specifically agreed to follow "policy and procedure" in lieu of Defendants' sole and unfettered discretion.

Secondly, and more disturbingly, there is an undercurrent to Defendants' arguments suggesting that Plaintiff was somehow greedy by daring to suggest that he should be paid in accordance with the terms of an Employment Agreement he rigorously negotiated. Statements by Defendants such as, "Although Dr. Barot earned almost $1 million . . . he contends that he is entitled, as a matter of right, to even more," suggest that the Court and the law should somehow ignore the terms of Plaintiff's contract because he earned almost $1 million. (Doc. 74, p. 1) This "how dare he!" attitude exhibited by Defendants, which has nothing to do with the law, is the actual reason Defendants denied Plaintiff's

additional compensation and find themselves having to grasp at straws to try to legitimatize their legally unsupported actions.[1]

## I.   PROCEDURAL HISTORY

Plaintiff does not dispute the Procedure History outlined in Defendants' Brief (Doc. 74), and notes that Plaintiff filed his own Motion for Partial Summary Judgment on January 31, 2017 (Doc. 61) with accompanying Brief (Doc. 63).[2]   Plaintiff now files this Brief in Opposition of Defendants' Motion for Summary Judgment, concurrently with his Response to Statement of Undisputed Material Facts.

---

[1]      Ironically, Defendant Susquehanna Health System was acquired by University of Pittsburgh Medical Center (UPMC) in October 2016. (see http://www.pennlive.com/news/2016/10/susquehanna_health_becomes_par.html).  According to public records, the CEO of UPMC, Jeffrey Romoff earned $6.4 million on total compensation for the 12 months ending June 30, 2015, including $961,546 in base compensation and $3.1 million in bonus and incentives. (see http://www.bizjournals.com/pittsburgh/news/2016/05/13/filings-upmc-ceos-compensation-tops-6-4m.html)  One cannot help but wonder if Susquehanna Health System begrudges Mr. Romoff his $3.1 million in bonus and incentives considering he had already earned almost $1 million in base salary.

[2]      Although not relevant to the actual procedural history, Plaintiff does take exception to Defendants' characterization of why the parties stipulated to the dismissal of Counts I through IV on October 10, 2106 (Doc. 56).  As alluded to in the parties' Joint Motion to extend deadlines, also filed on October 10, 2016 (Doc. 57), Plaintiff agreed to stipulate to the dismissal of Counts I through IV in exchange for Defendants' agreement to proceed with mediation in attempt to resolve this matter, which did occur but was unsuccessful.  Defendants' suggestion that the counts were dismissed "apparently" because Plaintiff's extensive discovery efforts did not result in success is not only irrelevant to the matter at hand, it is misleading to the Court to the extent that Defendants know exactly why Plaintiff agreed to stipulate to the dismissal of Counts I through IV, and simply want to make irrelevant overtures that somehow Plaintiff just "gave up" on Counts I through IV so therefore Count V must be without merit.

## II.   <u>STATEMENTS OF FACTS</u>

Plaintiff refers this Honorable Court generally to his Counter Statement to Defendants' Statement of Material and Undisputed Facts, which is being filed contemporaneously with this brief and incorporates the same herein by reference.  Additionally, Plaintiff will directly address several inaccurate and/or misleading statements made by Defendants in their Statement of Facts.

Defendants state that "Plaintiff did not submit the forms that were required to be paid for his Medical Director work, and did not suffer a reduction in pay as a result of his termination." (Doc. 74, p. 5)  Plaintiff testified only that he did not submit the forms for <u>all</u> of the work he did as Medical Director, and therefore lost income as a result of not submitting all of the forms.  (Doc. 66-1, Deposition of Navin Barot, M.D., 129:1 – 130:9)  There is no evidence in the record that Plaintiff did not submit any of the forms.  By terminating Plaintiff's Medical Director Agreement, Defendants deprived Plaintiff of the continued earning potential for work he may have performed and submitted as Medical Director for the remaining term of his contract.

Defendants incorrectly state that Plaintiff accepted employment with Gulfport Memorial Hospital on January 19, 2011, and that this acceptance of employment had occurred at the time of the Compensation Committee Meeting May 12, 2011.  (Doc. 74, pp. 6, 7 n.4)  In fact, on January 19, 2011, Plaintiff's acceptance was of the terms of a letter of intent, not an employment agreement.  (Doc. 66-1, 206:3 – 21)  Plaintiff's employment agreement with Memorial Hospital at Gulfport was not effective

until May 15, 2011 (Doc. 62-35), and if SHMG had cured the breach of contract following notice from Plaintiff's attorney, Plaintiff would have remained at SHMG.[3]  (Doc. 66-1, 234:21 – 235:5)

Defendants cite to the fact that on March 9, 2011, Plaintiff's attorney sent a letter to Defendants rescinding his notice of breach from March 7, 2011.  (Doc. 74, p. 6)  Defendants fail to mention that Plaintiff's attorney rescinded the March 7 letter based only on the recommendation of SHS Counsel, Kenneth Young, because the Compensation Committee was planning to meet a couple days later and, as Mr. Young suggested to Plaintiff's attorney, "Are you sure you want to be of record with a letter saying that we're in breach and threatening to quit in advance of the board meeting to talk about this issue?"  (Deposition of Kenneth Young, Doc. 82, Ex. "A," 31:25 – 33:11)

Defendants state, without citation (and incorrectly), that the compensation considered by the Committee at the May 12, 2011 meeting, "would have constituted every penny of the amount the plaintiff claimed that he was arguably entitled."  To the contrary, the Compensation Committee on May 12, 2011 included compensation only for RVU's associated with CPT Code 99144 and did not include compensation for RVU's associated with CPT Code 99145, which has yet to be calculated.  (Doc. 62-25)  In any event, the total additional incentive compensation due to Plaintiff remains a factual issue to be determined at a later date.  As discussed in Plaintiff's Motion for Partial Summary Judgment and

---

[3]     It is unclear to Plaintiff why Defendants believe Plaintiff's compensation at Memorial Hospital at Gulfport is relevant to at legal analysis of Plaintiff's contract with SHMG.  (Doc. 74, p. 18 n.9)  If anything, Plaintiff's earning potential at Gulfport is illustrative that Plaintiff's expectation of compensation from Defendants was not unreasonable, and that Plaintiff was prejudiced by Defendants' failure to definitively tell Plaintiff they would not honor his contract terms until almost a year after his first contract year had ended.

accompanying Brief, Defendants have breached Plaintiff's Employment Agreement by failing to pay Plaintiff *any* additional compensation related to the conscious sedation codes.

Defendants speciously claim that "Plaintiff even admitted in his deposition that the contract does not include a provision entitling him to incentive compensation for the sedation codes he seeks." (Doc. 74, p. 17)  This statement is misleading and out of context.  In the deposition testimony cited by Defendants, Plaintiff was being asked about the terms of his employment contract with his current employer, Gulfport Memorial Hospital, the specific terms of which are irrelevant to his case against SHMG, and was being asked to compare and contrast the two contracts.  The fact is that the conscious sedation codes are treated exactly the same in Plaintiff's Employment Agreement with Defendants as all other CPT codes, including all of the codes that are not in dispute whatsoever.  (Doc. 62-6).

## III.    STATEMENT OF QUESTIONS INVOLVED

A.      Are Defendants entitled to summary judgment on Plaintiff's contract claim?

**Suggested Answer:    No. To the contrary, Plaintiff is entitled to partial summary judgment as further discussed in Plaintiff's Motion for Partial Summary Judgment and accompanying Brief.  (Docs. 61, 63)**

## IV.    STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  This procedural

mechanism and the authorities interpreting and applying it have set a high standard to determine when granting a summary judgment motion is appropriate.

The moving party always bears the initial responsibility of informing the district court of the reason for its motion, as well as identifying those portions of evidentiary record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2552, 91 L.Ed. 2d 265 (1986). In response to a motion for summary judgment, the nonmoving party must then show that a genuine issue of fact exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). "If, however, there is any evidence in the record from any source from which a reasonable inference in the respondent's favor may be drawn, the moving party simply cannot obtain a summary judgment." *In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238, 258 (1983) reversed on other grounds *sub nom.*

When deciding whether granting summary judgment is proper, the district court must accept and believe the evidence of the non-moving party as true, and must not weigh or consider the credibility of witnesses. *Anderson,* 477 U.S. at 248-52. Any and all doubts regarding the evidence must be resolved in favor of the non-moving party on summary judgment. *Eastman Kodak Co. v. Image Technological Services, Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2076 (1992). If the non-moving party's evidence contradicts that of the moving party, then the non-movant's evidence must be taken as true. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied,* 507 U.S. 912, 113 S. Ct. 1262 (1993).

## V.    <u>LEGAL ARGUMENT</u>

### A.    THE COMPENSATION COMMITTEE IMPROPERLY DENIED PLAINTIFF INCENTIVE COMPENSATION

Defendants incorrectly rest their arguments on the false premise that the Compensation Committee had unfettered discretion to deny Plaintiff additional compensation for the work he did relative to the conscious sedation CPT Codes 99144 and 99145.

Plaintiff's compensation was defined by the terms of his Employment Agreement.  The method by which contracts are to be interpreted is well established.  When interpreting a contract, a court must determine the intent of the parties and effect must be given to all provisions in the contract.  *Dept. of Transp. v. Manor Mines, Inc.,* 523 Pa. 112, 119, 565 A.2d 428, 432 (1989).  It is firmly settled that the intent of the parties to a written contract is contained in the writing itself.  *Steuart v. McChesney,* 498 Pa. 45, 48-49, 444 A.2d 659, 661 (1982).  Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract. *D'Huy v. D'Huy,* 390 Pa.Super. 509, 518, 568 A.2d 1289, 1293 (1990).  Where the contract terms are ambiguous and susceptible of more than one reasonable interpretation, however, the court is free to receive extrinsic evidence, *i.e.,* parol evidence, to resolve the ambiguity.  *Id.*

A contract will be found to be ambiguous:

if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the

parties do not agree on the proper construction.

*Z & L Lumber Co. of Atlasburg v. Nordquist,* 348 Pa.Super. 580, 585-86, 502 A.2d 697, 700 (1985) (citations omitted).   To determine whether there is an ambiguity, it is proper for a court to hear evidence from both parties and then decide whether there are objective indications that the terms of the contract are subject to differing meanings.  *Id.*

Plaintiff's Employment Agreement provides that compensation above MGMA 90th percentile would be presented to the Committee for consideration and a determination "in accordance with SHMG policy and procedure."  Since the terms "policy" and "procedure" are not further defined in the Agreement, it is proper for the Court to consider evidence from both parties regarding the meaning of these terms.   It is clear from the evidence of record that the Committee did not have unfettered discretion to deny additional compensation.

Throughout the course of Plaintiff's rigorous contract negotiation, SHMG made numerous representations regarding what would happen if Plaintiff exceeded the 90th percentile compensation level.  Plaintiff and his attorney were told the following, in writing:

1) Now remember, if your productivity does exceed the 90th percentile, we only have to go to our Physician Compensation Committee for their approval to pay above that level, which **if you are doing the work will not be a problem**.  (Emphasis Added, Doc. 62-9, BAROT 527 through BAROT 529; Doc. 62-3, 35:14 – 36:1)

2) Our committee is very fair and understanding in these matters, **they just want to make sure we are not paying over the 90th percentile for work being done under that level**. We rarely have to go before them because most of our physicians do not hit that level.  On the few occasions we did ask for approval, they have granted it with appropriate justification.  (Emphasis Added, Doc. 62-10, D-79 through D-80; Doc. 62-3, 39:8-21)

3) **[A]s long as you are producing, the committee will approve the payment**.  We just have to protect the organization and keep the IRS happy.  (Emphasis Added, Doc. 62-11, BAROT-539; Doc. 62-3, 47:10-19)

4) We've revised the 90th percentile cap to no longer be the firm ceiling that applies to our other physicians, although it is subject to some procedural safeguards.  I think this is a great compromise that ensures **Dr. Barot will be fully compensated for all his work here, while simultaneously protecting our non-profit status**.  (Emphasis Added, Doc. 62-12, #3)

5) Now we have flexibility for sure and **I guarantee you that we are only complying with IRS tax-exempt laws of concern**.  This only means that once you hit the 90th percentile, we simply present the facts to the Board Compensation committee for their approval.  Let's face it, **we want you to produce!  Please trust me, I will make sure you are treated and paid fairly.**  (Emphasis Added, Doc. 62-13, BAROT-544; Doc. 62-3, 54:14-24)

By making these promises to induce Plaintiff to work for SHMG, SHMG established the policies and procedures for the Committee, which is (1) if Plaintiff is doing the work, he will get paid, and (2) the Committee may insure that SHMG does not violate the IRS code.

The "Susquehanna Health Medical Employed Physician Compensation" policy (the "Compensation Policy") is the only document that would have controlled the performance or operation of the Physician Compensation Committee, and is the only document one could refer to if looking to see the policies, procedures or anything like that of the Physician Compensation Committee.  The stated policy is that SHMG shall comply with the provisions of applicable law, including but not limited to 42 U.S.C. §1320 et seq. (the "Anti-Kickback Statute"), 42 U.S.C. §1395 et seq. (the "Stark Regulations") and §53.4958 of the Internal Revenue Code (the "Intermediate Sanction Regulations") (Doc. 62-26, 5:19 –6:19; Doc. 62-16, D-286 through D-288)  Notably, there is no written policy which directs the Committee to consider physician compliance audits, physician performance and referrals, or

a physician's reputation, behavior or staff turnover as a factor in determining physician compensation.[4]

The Committee clearly abused its charge and went beyond the permissible policies and procedures referenced in Plaintiff's Agreement by considering these factors in determining whether to approve Plaintiff for additional compensation.   Per the Agreement, Plaintiff's compensation would only be presented to the Committee, **if** Physician's productivity, expertise and overall job performance suggested that his compensation should exceed the 90th percentile compensation limitation.   Hence, any review of Plaintiff's productivity, expense and overall job performance is a condition precedent to the matter being brought to the Committee in the first place, not an issue for review by the Committee. In other words, any discretionary considerations maintained by Defendants with regard to Plaintiff's incentive compensation concluded once Plaintiff and his additional compensation was approved by SHMG for presentation to and consideration by the Committee.

---

[4]      In their Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment, Defendants seem to argue that a document entitled, "Requested Information for Physician Compensation Exceptions" (Doc. 82, Exhibit "D") is a "written policy" the Compensation Committee (Doc. 80, p. 8). However, none of the members of the Compensation Committee testified to this when asked which documents controlled the operations of the Compensation Committee and the document is not designated as a policy of the Committee.  Furthermore, although Defendants allege that this form was "completed and discussed at the March 10, 2011 meeting and incorporated into the minutes," a review of the minutes indicates no evidence of the form or reference to the form.  (Doc. 65-2, Ex. 1-D, Doc. D-20 through D-25)  There is actually no evidence that the form was ever completed or considered by the Committee, and, even if it were, many of the topics listed on the form are related to the physician's "productivity, expertise and overall job performance," which were criteria to determine whether Plaintiff's compensation warranted review by the Committee in the first place, not considerations for the Committee itself.  Finally, to the extent the issues listed on the form were considered in the March 10, 2011 meeting of the Compensation Committee, that was the meeting when the Committee approved one hundred percent of the incentive compensation that was presented for consideration, so even if the factors were permissible, they did not compel the Committee to deny any compensation to Plaintiff at the time the factors were allegedly presented and considered.

Based upon the contract language and evidence in the record, at most, the Committee was empowered to consider whether Plaintiff's compensation would violate the law.  At worst, the Committee was bound by the promises of SHMG's officers and counsel that Plaintiff would be paid if he "did the work."  Either way, the Committee abused its power by denying Plaintiff's incentive compensation based upon impermissible factors.  As discussed at length in Plaintiff's Brief in Support of his Motion for Partial Summary Judgment, the Stark Regulations, Anti-Kickback Statute and Internal Revenue Code did not limit the Committee from paying Plaintiff additional compensation, and as a result, SHMG breached its contract with Plaintiff.

Notably, other than making unsupported statements, without any legal authority or citation, Defendants do not make any attempt to justify the application of the Stark Regulations, Anti-Kickback Statute or Internal Revenue Code to legally impact whether Defendants could have paid Plaintiff additional incentive compensation.[5]  Rather, Defendants cite to three cases which are not factually

---

[5]   Plaintiff's Brief in Support of his Motion for Partial Summary Judgment explains in detail why (1) the Stark Law would not have prohibited Defendants from compensating Plaintiff at Fair Market Value for the work he did related to conscious sedation (Doc. 63, pp. 18-22); (2) the Anti-Kick Back Statute did not apply to Plaintiff because he was an employee of Defendants (Doc. 63, pp. 22-23); and (3) IRS regulations would not have limited Plaintiff's compensation because he was not a "disqualified person" (Doc. 63, pp. 23-24).  Perhaps because Plaintiff is correct, Defendants make no attempt to counter these assertions, other than purely conclusory statements.  Defendants state that the "Compensation Committee makes determinations . . . as to what amount of compensation is considered reasonable," (Doc. 74, p. 13) yet no explanation is ever given in the Committee Minutes or by any member of the Committee as to how or why that determination is made, or as to how or why Plaintiff was paid exactly the amount permissible as reasonable compensation such that even one additional dollar would violate these laws.  Ironically, Defendants argue that "[i]n order to avoid running afoul of federal requirements and potentially stiff IRS penalties, it is common in health care to have a bright-line rule at the 90th percentile as the upper cap on physician compensation," (Doc. 74, p. 12 n.6) yet that

11

analogous to the case at hand to incorrectly argue that the Compensation Committee had unfettered discretion to approve or deny Plaintiff additional incentive compensation at its whim, or should otherwise be held to a "good faith" standard of review.

In *Bd. of Trustees, Roofers Local No. 30 Combined Welfare Fund v. Int'l Fid. Ins. Co.*, cited by Defendants, the Court interpreted a contract in which the plaintiff was given "the sole and exclusive discretion," by specific contract language, to make determinations about the point in time in which a default had occurred, and found that the language "sole and exclusive discretion," meant exactly what it said.[6]

In *Barton v. Hewlett-Packard Co.*, also cited by Defendants, the Court actually found a contract

---

type of hard cap is exactly what Defendants had proposed as a "non-negotiable" term in Plaintiff's contract and later negotiated away at Plaintiff's insistence.  (Doc. 62-5, D-65 through D-66; Doc. 62-3, 25:12 – 27:12; Doc. 62-6, Docs. D-4 through D-5, see Section 7, Limitation on Compensation.)

[6]       "Again, the Court turns to the language of the bond agreements to determine the intent and meaning of the notice provision.  Paragraph 2 of the agreements states:

> In the event of default on the part of the [Company], the [Plaintiff] Funds shall notify the Surety within one (1) year after actual knowledge of such default. *A default shall be defined as occurring at such a point in time as it is determined within **the sole and exclusive discretion** of the [Plaintiff] Funds, that the [Company] has accrued delinquencies in contributions which cannot be resolved with the [Company].*

. . . (emphasis added).  According to these terms, notice of a claim is valid if sent within one year of 'actual knowledge of such default.' . . .  The intent of the parties could not be clearer.  By granting 'sole and exclusive discretion' to the Plaintiffs in declaring default, the agreements evidence a clear intent that such a decision lies in the hands of Plaintiffs alone."  *Bd. of Trustees, Roofers Local No. 30 Combined Welfare Fund v. Int'l Fid. Ins. Co.*, 63 F. Supp. 3d 459, 466–67 (E.D. Pa. 2014), *aff'd,* 644 F. App'x 133 (3d Cir. 2016)

for additional commission to be illusory because defendant Hewlett-Packard Company had retained the right to adjust the terms of a contract or cancel it entirely at any time without notice.[7]

Finally, in *Zebrowski v. Evonik Degussa Corp. Admin. Comm.*, also cited by Defendants, an explicitly broad level of discretion was granted to the defendant in interpreting the contract:

> The "broad" grant of discretion in the top hat plan at issue in *Goldstein* gave the administrator "'**sole authority**' to '[i]nterpret the provisions' of the plan." . . . The Supplemental Plan at issue here grants a similar degree of discretion to the Committee. Article XV of the 1999 Supplemental Plan, at section 15.2.3, gives the Committee the authority to "[i]nterpret[ ] the provisions of the Plan **in all particulars**."

*Zebrowski v. Evonik Degussa Corp. Admin. Comm.*, 578 F. App'x 89, 94 (3d Cir. 2014).

Based on the holdings in the *Zebrowski* case, Defendants improperly suggest that the Compensation Committee be held to a "good faith" standard in its review of Plaintiff's incentive compensation awards.[8]  Plaintiff's Employment Agreement is clearly distinguishable from the contract language in the three cases cited by Defendants.  In contrast to contracts which granted "sole and exclusive discretion," "sole discretion" or "sole authority," Plaintiff's incentive compensation, per the

---

[7]     "The Sales Letter stated that 'HP reserves the right to adjust the terms of the Sales Plan or to cancel it at any time.'" *Barton v. Hewlett-Packard Co.*, 635 F. App'x 46, 47 (3d Cir. 2015)

"HP clearly manifested its intention *not* to be bound by the commission rates set forth in the Sales Letter.  HP reserved the right to 'adjust the terms of the Sales Plan or to cancel it any time'; to 'adjust or cancel the terms of Sales plans, or Sales letters with or without notice at any time'; to 'change or discontinue' its Global Sales Compensation Policy 'with or without notice at any time'; and to decide any dispute regarding commission payments 'in its sole discretion.' . . . As other courts of appeal have recognized, no contract is formed if an employer retains complete discretion to modify or cancel an employee's commission.  *Id.* at 48.

[8]     In the *Barton* case, the contract was actually found to be illusory and therefore entirely unenforceable.  Defendants do not seem to be suggesting this standard apply to Plaintiff's Employment Agreement.

specifically negotiated contract terms, was to be determined "in accordance with SHMG policy and procedure." As discussed at length above and in Plaintiff's Brief in Support of his Motion for Partial Summary Judgment, SHMG policy and procedure does not equate to unfettered discretion, and therefore, Defendants' suggestion that the Committee be held to a "good faith" standard must be rejected. Rather, Defendants were required to review whether Plaintiff was entitled to additional incentive compensation in accordance with SHMG "policy and procedure," which circumscribed the review to whether the work was performed and whether payment of additional compensation violated the law. Further, any evaluation of Plaintiff's productivity, expertise and overall job performance, and any associated discretion related to this evaluation, was to be completed before Plaintiff's compensation issues were referred to the Committee. As discussed herein and in great length in Plaintiff's Brief in Support of his Motion for Partial Summary Judgment, Plaintiff did the work entitling him to additional compensation and payment of additional compensation related to the sedation codes would not have violated the law. Therefore, as a matter of law, Defendants' Motion for Summary Judgment should be denied, and Plaintiff's Motion for Partial Summary Judgment should be granted.

**B.     PLAINTIFF WAS DISCRIMINATED AGAINST ON THE BASIS OF HIS RACE AND NATIONAL ORIGIN**

In the letter from Plaintiff's counsel to Defendants dated April 15, 2011, Plaintiff provided a thirty day notice of breach including the assertion that Plaintiff had been the victim of illegal discrimination. (Doc. 62-33) In his Complaint, Plaintiff asserted that he was discriminated against on

14

the basis of his race because, among other things, he was denied continuing medical education, denied an opportunity to interview candidates, and replaced by a Medical Director by a Caucasian doctor. (Doc. 1, ¶¶ 22 – 27)  In Count V of his Complaint, Plaintiff alleged a breach of contract based upon these issues, in addition to the compensation issue previously addressed.  (Doc. 1, ¶ 58)

With respect to these issues, Plaintiff has produced evidence that he was denied continuing medical education.  Although the email of May 3, 2011 referenced by Defendants indicates that Plaintiff may attend and be reimbursed for a Digestive Disease Conference (Doc. 66-4, Ex. 7-B), Plaintiff testified that he was not afforded the opportunity to attend one CME, and in fact did not attend it.  (Doc. 66-1, 113:21 – 116:7).  Additionally, while Defendants argue that they provided proper notice to terminate Plaintiff's Medical Director contract, Defendants have not argued for summary judgment on the basis that the termination was not based on racial discrimination.  Therefore, the averments of Paragraph 58 a., b., d., and e. should be submitted to the trier of fact.

### C.    PLAINTIFF PROVIDED APPROPRIATE NOTICE OF A BREACH

Defendants' arguments that Plaintiff failed to provide proper notice of breach simply ignore the undisputed facts in this case.  Mr. Johnson received a letter from Plaintiff's attorney, dated April 15, 2011, indicating that there was a 30 days' notice of a breach of contract along with 30 days' notice of termination.  Along with other issues, Plaintiff's attorney cited SHMG's failure to pay for the WRVUs associated with the sedation CPT codes and illegal discrimination as material breaches.  (Doc. 1, Compl. ¶34; Doc. 8, Ans. ¶34; Doc. 62-26, 35:21 – 36:15, 37:22 – 38:5; Doc. 62-33, BAROT 551 – BAROT 553)  Plaintiff's employment with Memorial Hospital in Gulfport, Mississippi, which is

evidenced by a contract dated May 15, 2011, began after his employment with SHMG ended.  (Doc. 62-34, 180:3 – 181:10; Doc. 62-35, MHG00004, MHG00022 (redacted due to confidentiality))   If SHMG had cured the breach of contract following notice from Plaintiff's attorney, Plaintiff would have remained at SHMG.  (Doc. 62-34, 234:21 – 235:5)  As of the Committee meeting of May 12, 2011, and beyond, SHMG failed to cure the material breach.

There is no material issue of fact that Plaintiff gave SHMG thirty days' notice of a material breach, from April 15 through May 15, 2016, and that SHMG failed to cure.  Plaintiff did not start his new job until the thirty days expired, and was clear that he would have remained an employee of SHMG had the breach been cured.  Therefore, as a matter of law, Plaintiff did provide proper notice.

## VI.    **CONCLUSION**

For all of the forgoing reasons, it is respectfully requested that this Honorable Court deny Defendants' Motion for Summary Judgment, and grant Partial Summary Judgment to Plaintiff.

Respectfully submitted,

McCarthy Weisberg Cummings, P.C.

March 16, 2017_____        /s/ Larry A. Weisberg_____
Date                         Larry A. Weisberg, Esquire
                             PA Bar I.D. #: PA83410
                             lweisberg@mwcfirm.com

                             Derrek W. Cummings, Esquire
                             PA Bar I.D. #: PA83286
                             dcummings@mwcfirm.com

                             2041 Herr Street
                             Harrisburg, PA 17103-1624
                             (717) 238-5707
                             (717) 233-8133 (FAX)

                             *Attorneys for Plaintiff*

**CERTIFICATION OF WORD COUNT**
**PURSUANT TO FED. R. CIV. P. 11 AND L.R. 7.8(B)(2)**

The undersigned, as counsel for Plaintiff, hereby certifies that the foregoing Brief does not exceed 5,000 words, and in submitting this certification, counsel has relied upon the word count feature of the word processing system used to prepare the Brief. According to the word processing system used to prepare the Brief, the actual number of words in the Brief is 3,956.

Respectfully submitted,

McCarthy Weisberg Cummings, P.C.

March 16, 2017
Date

/s/ Larry A. Weisberg
Larry A. Weisberg, Esquire

18

## <u>CERTIFICATE OF SERVICE</u>

I, Larry A. Weisberg, Esquire, hereby certify that the foregoing **Brief in Opposition of Defendants' Motion for Summary Judgment** has been filed electronically and is available for viewing and downloading through the Court's Electronic Case Filing (ECF) System.   Upon the electronic filing of a pleading or other document, the Court's ECF System will automatically generate and send a Notice of Electronic Filing to all Filing Users associated with that case.   Transmission of the Notice of Electronic Filing constitutes service of the filed document pursuant to Standing Order No. 05-6, ¶12.2.1.   Accordingly, service was made to all counsel of record in this matter.


<u>/s/ Larry A. Weisberg</u>
Larry A. Weisberg